IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARJURITA D. KELLEY, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:16-CV-1015-B-BK |
| | § | |
| THE CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Orders Referring Motions*, Doc. 68 & Doc. 72, the Court now considers (1) T-Mobile USA, Inc.'s and MetroPCS Communications, Inc.'s *Motion to Dismiss Plaintiffs' Second Amended Complaint*, Doc. 66; and (2) the City of Dallas' *Renewed Motion to Dismiss Plaintiffs' State Law Tort Claims Against Individual Defendants*, Doc. 69. For the reasons that follow, the motions should be **GRANTED**.

**I.   BACKGROUND**

In December 2016, Plaintiffs filed a second amended complaint raising various claims against Defendants City of Dallas ("City"), T-Mobile USA, Inc. and MetroPCS Communications, Inc. (collectively, the "Telecom Defendants"), as well as City Police Officer Kevin Mansell ("Officer Mansell") and City police dispatcher, Abigail Dominguez ("Dominguez"),[1] (collectively, the "Individual Defendants").  Doc. 53.  Plaintiffs, who are

---

[1] Although Dominguez is named as a defendant in the operative complaint, as mentioned in the parties' *Joint Status Report*, she was not served with a summons, nor has counsel filed a notice of appearance on her behalf. Doc. 26 at 9.  Nevertheless, counsel for the City of Dallas filed a motion to dismiss the state law claims against her (that the Court considers here), which constitutes Dominguez's appearance in this case for all purposes. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 277 (5th Cir. 1989) ("The filing of a motion to dismiss is normally considered to constitute an appearance").

relatives of D'Lisa Kelley ("D'Lisa"), allege the following: One night in March 2014, D'Lisa's sister received a frantic phone call from D'Lisa who was screaming, but the call abruptly ended and D'Lisa did not answer her phone when her sister attempted to call her back. Doc. 53 at 7-8. D'Lisa's sister next received two texts from D'Lisa, but again her subsequent attempts to reach D'Lisa failed. Doc. 53 at 8. D'Lisa's grandmother, Marjurita Kelley ("Marjurita"), with whom D'Lisa lived, called 9-1-1 for police assistance and spoke with Dominguez. Doc. 53 at 8. Rather than dispatch emergency assistance as procedure dictated, Dominguez alerted her supervisor, Officer Mansell, about the call. Doc. 53 at 9. Officer Mansell instructed Dominguez not to send out a police officer and made several inappropriate statements about D'Lisa's age, race, gender, and pregnancy. Doc. 53 at 9.

Approximately 30 minutes later, Officer Mansell instructed Dominguez to call Marjurita to obtain D'Lisa's phone number so he could attempt to "ping" her phone. Doc. 53 at 9. After Officer Mansell obtained D'Lisa's number, he informed the Telecom Defendants[2], D'Lisa's cell phone service providers, of the emergency situation and requested that they "ping" D'Lisa's phone to obtain her location information; however, the Telecom Defendants failed to provide the information. Doc. 53 at 9-10, 19. Officer Mansell submitted a second "more formal" ping request, but the Telecom Defendants again failed to provide D'Lisa's location information. Doc. 53 at 10. Plaintiffs allege that the Telecom Defendants, in fact, delayed the process further by asking Officer Mansell to send in additional paperwork. Doc. 53 at 10. Officer Mansell did submit the additional paperwork; however, in the meantime, he coded the call in a manner such

---

[2] In their motion to dismiss, the Telecom Defendants refer to both corporate entities collectively as T-Mobile. Doc. 66 at 10 n.1.

that no officers would be dispatched until he obtained an accurate ping on D'Lisa's phone. Doc. 53 at 10. Officer Mansell did not follow up by the end of his shift or thereafter. Doc. 53 at 11.

D'Lisa's body was found several days later, and it appeared that she had died after a prolonged period of torture. Doc. 53 at 11-12. Plaintiffs contend that the Telecom Defendants failed to provide any useful information to Officer Mansell due to (1) issues created by the closure of certain cell tower sites as part of the integration of MetroPCS into T-Mobile's system; (2) gross negligence on the part of the Telecom Defendants' agents; and (3) the lack of effective internal 9-1-1 compliance processes and methodologies. Doc. 53 at 16.

In relevant part, Plaintiffs allege claims against the Individual Defendants for intentional infliction of emotional distress and wrongful death, and also bring a survival action, Doc. 53 at 35-36, 44-45. Plaintiffs sue the Telecom Defendants for (1) tortious interference with the 9-1-1 contract between the City and Plaintiffs; (2) negligence; (3) gross negligence; (4) misrepresentation, (5) breach of contract, (6) estoppel; and (7) wrongful death, and likewise allege a survival action, Doc. 53 at 36-46. The Individual Defendants and the Telecom Defendants now move to dismiss Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 66; Doc. 69.

## II. APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d

973, 975 (5th Cir. 1995) (quotation omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

## III. ARGUMENTS AND ANALYSIS

### A. Claims Against the Telecom Defendants

*1. Tortious Interference, Negligence, and Gross Negligence*

Among other arguments, the Telecom Defendants assert that all of Plaintiffs' claims fail because they are unable to show that either their actions/inactions or D'Lisa's cell phone itself were the proximate cause of D'Lisa's death and Plaintiffs' damages. Doc. 66 at 18-21. Rather, the Telecom Defendants maintain that D'Lisa's attacker actually caused her injuries, not her phone or the Telecom Defendants' alleged hindrance or delay in assisting law enforcement in the hope of locating the phone in time to save her. Doc. 66 at 19 (citing *City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (per curiam) for the proposition that hindering or delaying aid in the use of an emergency telecommunications system cannot, as a matter of law, be the proximate cause of an injury).

Plaintiffs respond that they have sufficiently alleged facts demonstrating that the Telecom Defendants' acts and omissions were a "but for" cause of D'Lisa's death since she was not killed until several days after she disappeared. Doc. 76 at 32-33. Plaintiffs argue that a prompt response by the Telecom Defendants to aid the police in locating D'Lisa would have put law enforcement and medical responders at or near the scene where she was ultimately found, and it is immaterial that other factors, such as dilatory police response and the criminal acts of D'Lisa's assailant, also contributed to her death. Doc. 76 at 33, 36. Plaintiffs contend that *Sanchez* is

4

distinguishable because it is a Texas Tort Claims Act ("TTCA") case, which requires that personal injury or death be proximately caused by actual "use" of personal property to be actionable. Doc. 76 at 34-35.

The Telecom Defendants reply that Plaintiffs' attempt to distinguish *Sanchez* is unfounded because no "special proximate cause" standard applies to TTCA cases. Doc. 83 at 4. Rather, the Telecom Defendants correctly urge, the Texas Supreme Court has made it clear that the common law proximate cause standard is identical to the proximate cause standard under the TTCA. Doc. 83 at 4 (citing *Michael v. Travis Cty. Housing Auth.*, 995 S.W.2d 909, 912-13 (Tex. App.–Austin 1999) (collecting cases)).[3]

To state a claim for tortious interference, negligence, and gross negligence, Plaintiffs must sufficiently allege that the Telecom Defendants' actions were the proximate cause of their injuries. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (gross negligence); *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (negligence); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (tortious interference). "The components of proximate cause are cause in fact and foreseeability." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). The test for cause in fact, otherwise known as "but for causation," is whether the act or omission in question was a substantial factor in causing the injury, without which the harm would not have occurred. *Id.* The cause in fact element cannot be based on mere conjecture, guess, or speculation. *HMC*

---

[3] After briefing was complete, the Court permitted the Telecom Defendants to file supplemental authority, namely an unpublished case from the United States Court of Appeals for the Fifth Circuit styled *Cook v. City of Dallas*, 683 Fed. Appx. 315 (5th Cir. 2017), *pet. for cert. filed*, No. 17-191 (Aug. 1, 2017). That case will be discussed *infra*.

*Hotel Props. II Ltd. P'ship v. Keystone-Texas Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014).

In the *Sanchez* case, upon which the Telecom Defendants rely, a 9-1-1 operator dispatched an ambulance to a drug overdose victim's apartment complex, but emergency personnel provided assistance to a different overdose victim at the same complex and then left the premises without aiding Sanchez, erroneously concluding that two closely-timed 9-1-1 calls related to the same victim. *Sanchez*, 494 S.W.3d at 724. Sanchez's parents sued the City under the TTCA for wrongful death, alleging (among other theories) that its 9-1-1 system malfunctioned, causing the call to disconnect prematurely, which led to their son's demise. *Id.* The trial and appellate courts ruled that the City could be held liable for Sanchez's death, but the Texas Supreme Court reversed.

The high court determined that any alleged defect in the City's 9-1-1 telephone system was not a proximate cause of Sanchez's drug overdose, and thus the City was immune from suit under the TTCA and entitled to dismissal at the outset of the case. *Id.* The court noted that for immunity to be waived under the TTCA, "personal injury or death must be proximately caused by a condition or use of tangible personal or real property," and thus the court had to determine whether the phone system's condition was a proximate cause of Sanchez's death. *Id.* at 726. The court pointed out that when a condition or use of property merely furnishes the circumstance that made the injury possible, the condition or use of the property is not a sufficiently substantial factor in causing the injury. *Id.* Rather, to constitute a "substantial factor," the condition or use of the property "must actually have caused the injury." *Id*. (quoting *Dallas Cty. v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009). Stated differently, the use of property that simply hinders or

delays treatment does not "actually cause[ ] the injury" and does not constitute a proximate cause of an injury. *Id.*

Even construing the *Sanchez* plaintiffs' claims liberally, the court held that the alleged 9-1-1 telephone system malfunction was not a proximate cause of their son's death because between the malfunction and his death were various intervening factors, including (1) the fact that emergency responders erroneously concluded that two separate 9-1-1 calls were redundant; and (2) six hours passed between the phone malfunction and Sanchez's death. *Id*. at 726-27. As the court summed up, Sanchez's death was caused by drugs, the passage of time, and the misinterpretation of information, which was not sufficient to establish that an alleged defect in the 9-1-1 phone system was a proximate cause of his death. *Id.* at 727.

In the *Cook* case that the Telecom Defendants submitted as supplemental authority, the Court of Appeals for the Fifth Circuit reached a similar conclusion on facts that are nearly identical to those presented here. In that case, Deanna Cook managed to call 9-1-1 from her cell phone as an intruder was attacking her inside her home. *Cook*, 683 Fed. Appx. at 317. The 9-1-1 call center received Cook's location several minutes into the call during which Cook could be heard screaming for help. *Id*. Nearly 50 minutes after Cook called 9-1-1, police arrived at her home, but then left without entering the residence. *Id*. Cook's family members found her body two days later. *Id*.

Her estate and relatives filed a complaint against the City and numerous City employees, and later filed an action against several telecommunications companies, alleging that the phone and systems manufactured and operated by the companies and used by Cook did not allow her name and exact location to be instantly transmitted to a 9-1-1 call taker, a dispatcher, or on-board police patrol cars. *Id*. The *Cook* plaintiffs alleged that had this information been instantly

7

transmitted – rather than the several minutes the transmission of information actually took −
Deanna Cook's life would have been spared. *Id*. at 320. They sought relief under various
theories of liability, including negligence, gross negligence, and wrongful death. *Id*. This Court
(District Judge Solis) dismissed the claims against the telecommunications defendants with
prejudice, finding that the plaintiffs had failed to adequately allege that the defendants' acts or
omissions caused Cook's death, and the plaintiffs timely appealed. *Id.* at 319.

The appellate court looked to the *Sanchez* opinion for guidance—although *Sanchez* did
not involve a claim of statutory immunity for telecom providers[4]—and readily concluded that the
proximate cause inquiry was the same. *Id*. at 320. The court found that the plaintiffs' contention
that Cook would not have died but for the fact that her location was provided after several
minutes, rather than immediately, was not plausible on the facts alleged because the plaintiffs did
not credibly claim that any of the intervening parties would have acted differently. *Id*. at 321

The court concluded that even if the lag in relaying Cook's location was a contributing
factor in the delay of potentially life-saving assistance, the delay was simply too attenuated from
the cause of her death to be a *proximate* cause. *Id*. (citing *Sanchez*, 494 S.W.3d at 727). "Like
the telephone-system malfunction in *Sanchez*, the allegedly deficient telecommunications
services and technology in the instant case 'did not actually cause [Cook's] death nor was [her]

---

[4] In the *Cook* case, the telecommunications defendants sought to invoke immunity from suit
pursuant to section 771.053(a) of the Texas Health and Safety Code, which states that
"[a] service provider of communications service involved in providing 9-1-1 service ... [or] a
manufacturer of equipment used in providing 9-1-1 service ... is not liable for any claim,
damage, or loss arising from the provision of 9-1-1 service unless the act or omission
*proximately causing the claim, damage, or loss* constitutes gross negligence, recklessness, or
intentional misconduct." (emphasis added). Although the Telecom Defendants have not
invoked that statutory immunity provision in this case, based on the court's application of it to
the telecommunications defendants in *Cook*, it is applicable nonetheless. *See Cook*, 683 Fed.
Appx. at 319.

death hastened or exacerbated by' the alleged deficiencies." *Cook*, 683 Fed. Appx. at 321 (quoting *Sanchez*, 494 S.W.3d at 727). Accordingly, the appellate court upheld the district court's decision finding that those allegations, which it noted consisted of conjecture and speculation, were insufficient to defeat a motion to dismiss. *Cook*, 683 Fed. Appx. at 321 n.4 (citing *Twombly*, 550 U.S. at 555).

Given the similarity in the facts, the uniform applicability of proximate cause requirement at common law, and the holdings in *Sanchez* and *Cook*, the Court has little choice but to reach the same conclusion in this case. In fact, the intervening factors in the case at bar arguably result in even more attenuated circumstances than were present in either *Sanchez* or *Cook*. Here, after Marjurita called 9-1-1 and spoke to Dominguez after receiving D'Lisa's frantic phone call, Dominguez did not send out emergency assistance but instead alerted Officer Mansell. Doc. 53 at 9. Officer Mansell then allegedly waited approximately 30 minutes to instruct Dominguez to obtain D'Lisa's phone number so he could try to "ping" her phone, which was attempted twice. Doc. 53 at 9-10. In the meantime, however, Officer Mansell also coded the call in a manner such that no officers would be dispatched until the phone was located, and neither he nor Dominguez ever followed up. Doc. 53 at 10-11. D'Lisa's body was found several days later, and it was evident that she had been murdered.

Like the *Sanchez* and *Cook* cases, Plaintiffs' claims are premised on the allegations that if D'Lisa's location had been available to emergency responders sooner rather than later, her life would have been spared. And just as in those cases, such allegations are not sufficient to establish that any purported defect in the Telecom Defendants' system and/or practices was a proximate cause of D'Lisa's death. *Cook*, 683 Fed. Appx. at 321; *Sanchez*, 494 S.W. 3d at 727. Moreover, Plaintiffs have not and cannot plausibly allege that any of the intervening parties

would have acted differently had the Telecom Defendants' allegedly defective systems and practices been up to par. *See Cook*, 683 Fed. Appx. at 321. As in *Cook*, the allegedly deficient service in this case did not actually cause D'Lisa's untimely death nor was her death "hastened or exacerbated by" the alleged deficiencies. *See id.* Plaintiffs' allegations of what would have happened if the Telecom Defendants had pinged D'Lisa's phone sooner are but conjecture, and thus, insufficient to establish the requisite proximate cause.

Accordingly, the Court concludes that Plaintiffs have not sufficiently pleaded that the Telecom Defendants' deficient service/technology/procedure was a proximate cause of D'Lisa's death. As such, Plaintiffs' tortious interference, negligence, and gross negligence claims against the Telecom Defendants fail as a matter of law.

### 2. *Wrongful Death and Survival Claims*

The Telecom Defendants argue that Plaintiffs' remaining claims fail, among other reasons, because they are derivative of the aforementioned tort claims. Doc. 66 at 36. Plaintiffs respond that the derivative nature of the claims is immaterial because they are entitled to "step into the shoes" of D'Lisa and file suit on her behalf. Doc. 76 at 19-20.

While Plaintiffs are technically correct, what they fail to acknowledge is that their ability to recover is dependent upon whether D'Lisa would have been able to recover had she lived. *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345-46 (Tex. 1992). Because, as discussed above, Plaintiffs have not pleaded any plausible allegations of proximate cause to support their tort claims, their wrongful death and survival actions fail for the same reasons as do their tortious interference and negligence claims.[5]

---

[5] Because all of Plaintiffs' claims should be disposed of for the aforementioned reasons, the Court does not address the Telecom Defendants' additional arguments.

### *3. Misrepresentation, Breach of Contract, and Estoppel Claims*

Plaintiffs also sue the Telecom Defendants for misrepresentation, breach of contract, and estoppel; however, as the Telecom Defendants note, Plaintiffs failed to address the motion to dismiss those claims. *See* Doc. 76; Doc. 83. "Failure to pursue a claim beyond the initial complaint constitutes abandonment." *Osborn v. Bank of New York Mellon*, No. 3:16-CV-0308-G, 2016 WL 3211771, at *2 (N.D. Tex. May 13, 2016) (Stickney, J.), *adopted by* 2016 WL 3190243 (N.D. Tex. June 7, 2016) (Fish, J.). Consequently, because Plaintiffs have failed to defend their misrepresentation, breach of contract, and estoppel claims, said claims are deemed abandoned. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim where she failed to defend claim in response to defendant's motion to dismiss); *Osborn*, 2016 WL 3211771, at *2 (same).

## B. State Law Tort Claims Against the Individual Defendants

The City asserts that Plaintiffs' tort claims against the Individual Defendants are subject to dismissal under Texas' "election of remedies" statute, which requires a plaintiff to decide at the outset whether (1) an employee acted independently, and is thus solely liable; or (2) he acted within the general scope of his employment such that the governmental unit is vicariously liable. Doc. 69 at 3 (citing Tex. Civ. Prac. & Rem. Code § 101.106(e)). The City notes that section 101.106(e) requires that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Doc. 69 at 3-4.

Plaintiffs respond that, "based on information and belief," some of the Individual Defendants' conduct could be considered to be independent and outside the course and scope of

their employment such that they may be liable individually. Doc. 82 at 4-6. Plaintiffs urge that it "is too early in a litigation to force that choice" on them. Doc. 82 at 4.

As the City correctly observes, however, section 101.106(e) requires a plaintiff to make an irrevocable election at the time of filing suit under the TTCA between suing the governmental entity or proceeding against the government employee alone. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). The purpose of section 101.106 is to reduce the resources that the government and its employees must use in defending against redundant litigation and alternative theories of recovery. *Id.* "Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually." *Id.*

In the present case, Plaintiffs chose to file state law tort claims against both the City and the Individual Defendants arising out of the same subject matter. As such, the Individual Defendants are entitled to immediate dismissal of the claims against them with prejudice. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (holding that the plaintiff's claims against individual police officers were correctly dismissed pursuant to section 101.106(e) because he had sued both the governmental entity and the officers for the same alleged violations under a tort theory of liability); *Nieman v. E. Street Invs., LLC*, No. 14-CV-3897-M, 2016 WL 1212065, at *4 (N.D. Tex. Feb. 16, 2016) (Stickney, J.) (finding that tort claims against individual government employees "must be dismissed immediately once the governmental entity files a motion to dismiss."), *adopted by* 2016 WL 1182618 (N.D. Tex. Mar. 28, 2016) (Lynn, J.).

## C. Plaintiffs' Request of a Stay

Plaintiffs request that if the Court is inclined to find any of the Telecom Defendants' or the Individual Defendants' arguments regarding "standing" meritorious that Plaintiffs be provided the opportunity to address the defect through additional filings. Doc. 76 at 20. Plaintiffs make three references to "standing." The first and second relate to whether Marjurita has standing to bring wrongful death and survival actions against Defendants as representative of D'Lisa's estate. Doc. 76 at 17-19. That issue is immaterial, however, because Plaintiffs, including Marjurita, cannot bring those derivate causes of action for the reasons previously discussed. Plaintiffs further aver that "Defendants" have challenged Marjurita's "standing" to pursue her section 1983 claims, Doc. 76 at 19, but those claims are not within the scope of this recommendation.

## D. Plaintiffs' Request for Leave to Amend

Lastly, Plaintiffs request leave to file a third amended complaint if the Court dismisses the instant complaint. Doc. 76 at 41-42. Here, as previously discussed, Plaintiffs' tort claims against the Telecom Defendants and the Individual Defendants are not legally debatable given the authority discussed at length above. Plaintiffs, who are represented by able counsel, already have amended their complaint twice. Moreover, they have not even suggested the existence of plausible facts that can overcome the deficiencies noted in their claims against the Telecom Defendants. Thus, the Court must conclude at this juncture that they have pled their best case. Accordingly, granting leave to amend their claims yet again would be futile and cause needless delay. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). As such, Plaintiffs'

tort claims against the Telecom Defendants and the Individual Defendants should be dismissed with prejudice. See *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

## IV. CONCLUSION

For the reasons stated, it is recommended that (1) the Telecom Defendants' *Motion to Dismiss Plaintiffs' Second Amended Complaint*, Doc. 66, and (2) the City's *Renewed Motion to Dismiss Plaintiffs' State Law Tort Claims Against Individual Defendants*, Doc. 69, be **GRANTED**, and all claims against Defendants T-Mobile USA, Inc., MetroPCS Communications, Inc., Kevin Mansell, and Abigail Dominguez be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on August 17, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE