## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MARJURITA D. KELLEY, et al.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 3:16-CV-1015-B-BK** |
| | § | |
| **THE CITY OF DALLAS, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant District Judge Boyle's *Standing Order of Reference*, Doc. 115, this case has been referred to the undersigned magistrate judge for pretrial management. The Court now considers whether Plaintiffs' *Third Amended Complaint*, Doc. 113, states a claim for violation of their equal protection rights. *See* Doc. 110 (order adopting magistrate judge's recommendation, permitting Plaintiffs to amend their complaint to replead their equal protection claim, and requiring Plaintiffs to file a supporting synopsis explaining how the amendments overcome the grounds stated for dismissal in the Court's order). Because the *Third Amended Complaint* does not cure the deficiencies previously noted by the Court, Plaintiff's equal protection claims should be **DISMISSED WITH PREJUDICE**.

## I.     PROCEDURAL HISTORY

This case being well familiar to the parties, the Court does not undertake to set forth the procedural history at length. As relevant here, Plaintiffs alleged in their *Second Amended Complaint* that the City of Dallas ("the City") violated Plaintiffs' equal protection rights by failing to provide proper emergency assistance to their relative, D'Lisa Kelley ("D'Lisa") following a 9-1-1 call from Plaintiff Marjurita Kelley ("Marjurita"). Doc. 53 at 24. Plaintiffs

claimed that (1) the City has a policy, practice, or custom of providing less assistance to female victims who live in high crime and predominantly minority race neighborhoods, and (2) discrimination against such persons was a motivating factor in the City's refusal to prioritize and respond quickly to Marjurita's 9-1-1 call as opposed to how the call would have been handled if the caller had been a non-minority and/or in a more affluent neighborhood. Doc. 53 at 24-29. Relatedly, Plaintiffs contended that the City has a policy, custom, or practice of providing less assistance to calls from domestic assault victims as opposed to victims of other types of assault. Doc. 53 at 25-27. Finally, as a sub-set of their equal protection claims, Plaintiffs raised a failure-to-train claim, contending that the City failed to (1) implement adequate customs, policies, practices, or procedures, and (2) train its personnel adequately on the appropriate policies, practices, or procedures regarding the handling of 9-1-1 possible domestic violence calls from victims and/or family members which involve imminent danger. Doc. 53 at 24, 28.

As to Defendant City Police Officer Kevin Mansell ("Officer Mansell"), Plaintiffs contended that he (1) violated Marjurita's right to equal protection based on her race when he failed to prioritize her 9-1-1 call and dispatch emergency service; and (2) violated D'Lisa's rights based on her race and status as a victim of domestic violence, i.e., gender-based discrimination. Doc. 53 at 27, 29; Doc. 103 at 10 n.5 (citing *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000), *overruled on other grounds*, *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002)).

Upon review of Plaintiffs' *Second Amended Complaint*, the undersigned concluded, *inter alia*, that there were deficiencies therein relating to Plaintiffs' equal protection claims. First, the Court noted that Plaintiffs did not plead that Marjurita told City Police Dispatcher Abigail Dominguez ("Dominguez") that either she or D'Lisa was a minority or that either of them were

in a predominantly minority race neighborhood.  Doc. 103 at 13.  Second, while Plaintiffs alleged that Dominguez alerted Officer Mansell about the 9-1-1 call, Doc. 53 at 9, they did not state that Dominguez informed him of Marjurita's or D'Lisa's race, neighborhood, or the nature of the threat D'Lisa was facing.  Doc. 103 at 13.

The Court also noted that Plaintiffs did not allege that (1) Dominguez conveyed to Officer Mansell – or that he otherwise knew − that Marjurita's 9-1-1 call originated from a predominately minority neighborhood; or (2) Dominguez or Officer Mansell had any reason to believe that D'Lisa's situation was rooted in domestic violence.  Rather, Plaintiffs merely alleged that "[i]n response [to Dominguez's report of Marjurita's call], Officer Mansell made several statements regarding D'Lisa's age, race, and gender."  Doc. 103 at 13 n.8 (citing Doc. 53 at 9).

Additionally, while Plaintiffs pleaded that the City has a policy or custom of providing less assistance to victims in predominantly minority-race neighborhoods than to victims in other neighborhoods, they did not specify D'Lisa's location at the time of the attack.  Doc. 103 at 13-14.  Plaintiffs were given the opportunity to file a third amended complaint in attempt to overcome the deficiencies in their equal protection claims based on race and gender.  Doc. 103 at 14; Doc. 110.  Plaintiffs have now filed their *Third Amended Complaint* together with a synopsis addressing how they have amended their complaint to remedy the deficiencies noted, Doc. 113, and Defendants have filed a response, Doc. 114.

## II.    APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a

recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, a plaintiff must allege facts that show she has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

The Equal Protection Clause requires that similarly situated persons be treated alike. *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). To state a claim of racial or gender discrimination under the Equal Protection Clause, a plaintiff must allege that she was treated differently than other similarly-situated individuals and that the unequal treatment stemmed from a discriminatory purpose. *See Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.' . . . It instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an

4

identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (citation and some internal quotation marks omitted).

## III.    ARGUMENTS AND ANALYSIS

### 1. Gender-Based Discrimination

In Plaintiffs' synopsis and *Third Amended Complaint*, they have added allegations that they assert support their claim that D'Lisa was discriminated against due to her status as a victim of domestic violence. Doc. 113 at 2-4; Doc. 113 at 11-21 (¶¶ 22-30). The allegations to which they point, however, do not allow such an inference. Specifically, the only amendments to which Plaintiffs cite that bear even tangential relevance to the domestic violence inquiry merely state that (1) D'Lisa's sister got a call from D'Lisa, "and she was screaming for her life. Somebody was beating her. And we don't know who has her and so I don't know what to do"; (2) D'Lisa's sister saw D'Lisa's name on her phone's caller ID and when she answered, "all she could hear was [D'Lisa] screaming 'Stop. Stop.' And somebody was hitting her and telling her – it was a male voice telling her to 'Shut up. Shut up.' And then we haven't heard from her since."; and (3) Officer Mansell asked Dominguez "does she [Marjurita] think it was – they were fighting?" to which Dominguez answered, "No. She knows they were hitting on her. . . She was yelling 'Stop.'" Doc. 113 at 13, 15, 19.

These newly-pleaded factual allegations do not suffice to state a claim that Plaintiffs' rights were violated due to D'Lisa's potential status as a domestic violence victim – as opposed to her being the victim of a robbery, an assault by an unknown assailant, or the like. Accordingly, Plaintiffs' claim against Officer Mansell for gender discrimination fails. Plaintiffs' claims against the City for its alleged failure to train and practice of providing less assistance to domestic violence victims fail for the same reason.

*2. Race-Based Discrimination*

Plaintiffs added allegations to their *Third Amended Complaint* which they assert support

their claim that Officer Mansell discriminated against D'Lisa and Marjurita due to their race.

Doc. 113 at 2-4; Doc. 113 at 11-21 (¶¶ 22-30).  The amendments do cure some of the

deficiencies in the *Second Amended Complaint* insofar as they assert that (1) D'Lisa was in a

minority neighborhood when she was assaulted, Doc. 113 at 11-12; (2) Dominguez knew that

D'Lisa was African-American because Marjurita informed her of that fact, Doc. 113 at 14; (3)

on information and belief, Dominguez "created a call sheet in which she noted D'Lisa's race,

location in South Dallas, and the nature of the call.  Once this information was inputed [sic],

Officer Mansell became aware of D'Lisa [sic] race.", Doc. 113 at 20; and (4) Dominguez

provided Officer Mansell with Plaintiffs' address from which "Officer Mansell was able to

ascertain that the call and disturbance was centered in South Dallas – a predominantly African-

American and Hispanic community." Doc. 113 at 20-21.  Assuming that this is sufficient to draw

an inference that Officer Mansell knew that D'Lisa and Marjurita were African-American,

Plaintiffs still must allege facts that will allow the Court to draw the inference that he treated

them differently due to that fact.  As with their gender-based claim, however, the allegations to

which Plaintiffs point do not permit an inference that Officer Mansell provided Plaintiffs with

inferior police protection compared to that which he would have provided to similarly situated,

non-minority persons.

The *Third Amended Complaint* asserts that in his conversation with Dominguez, "Officer

Mansell made several statements regarding D'Lisa's age, race, and gender, as well as her

pregnancy, that indicated his gender and racial bias." Doc. 113 at 18.  However, the only source

of this information is a portion of the 9-1-1 transcript that Plaintiffs have included, which reads

as follows:

> [Dominguez]:  Okay.  Let me call her back.  I'll still send police for her so we can, you know, do a missing or something or not?
>
> [Officer Mansell]:  Not yet.  I mean –
>
> [Dominguez]:  Until we ping it?
>
> [Officer Mansell]:  – she's not missing because she lives with her but she's just –
>
> [Dominguez]:  Well, she was supposed to come back though.  She told her she was going to –
>
> [Officer Mansell]:  How old is this girl?
>
> [Dominguez]:  She's 24.
>
> [Officer Mansell]:  Oh.  No.
>
> [Dominguez]:  Her granddaughter, but she never goes out missing and then there's one more thing, she's pregnant.
>
> [Officer Mansell]:  Well, sounds like she was missing before.  How did she get in that situation?
>
> [Dominguez]:  But she's 24.  Come on.  I mean –
>
> [Officer Mansell]:  All right.  Well, get me a phone number and let's see if we can ping it...

     While the transcript reveals Officer Mansell may have joked in poor taste about

D'Lisa's pregnancy, it simply does not show – and the *Third Amended Complaint* does not

sufficiently plead – facts from which a reasonable inference can be drawn that Officer Mansell

treated D'Lisa's case differently than he would have treated a case involving a similarly situated,

non-minority individual.  In short, Officer Mansell's arguable mismanagement of the case and

Plaintiffs' subjective belief of discrimination do not suffice to demonstrate an equal protection

violation of constitutional magnitude. *See Taylor*, 257 F.3d at 473; *see also Ashcroft*, 556 U.S. at 676 (holding that "the plaintiff must plead and prove that the defendant acted with discriminatory purpose."); *Byers v. Dallas Morning News, Inc*., 209 F.3d 419, 427 (5th Cir. 2000) (holding that the plaintiff's subjective belief that he had been discriminated against based on his race did not create an inference of intentional discrimination). Accordingly, Plaintiffs' equal protection claims against Officer Mansell should be dismissed with prejudice. Further, because the equal protection claims against the City hinge on the viability of Plaintiffs' claims against Officer Mansell, those claims also should be dismissed with prejudice.

## IV.    CONCLUSION

Because Plaintiffs' *Third Amended Complaint*, Doc. 113, does not rectify the deficiencies the Court previously found in Plaintiff's gender- or race-based equal protection claims against Officer Mansell and the City, such claims should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on January 17, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

8

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

 A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9